# Staunton.

## BANKERS LOAN AND INVESTMENT COMPANY V. SPINDLE.

September 10, 1908.

Absent, Keith, P.

1. REAL ESTATE BROKERS—*Compensation—Release of Vendee—Interest.*— Although a real estate agent or broker has stipulated that his compensation shall be paid out of the last three notes to be given by the purchaser, if he has fully complied with his contract and effected a sale which the vendor can enforce, he cannot be deprived of his compensation by the action of the vendor in voluntarily releasing the vendee from his contract, without the assent of said agent. He is entitled to recover the amount stipulated for with interest from the time he would have received it had the said notes run to their maturity.

2. REAL ESTATE BROKER—*Compensation—Perfected Sale—Release of Vendee by Vendor.*—If a real estate agent or broker, in pursuance of his contract with a land owner, has found a purchaser ready and willing to comply with the vendor's terms, and has brought the parties together, and they have entered into a valid contract of sale which the vendor can enforce, and the sale has been completed so far as the agent is concerned, he cannot be deprived of his compensation by the voluntary release of the vendee and refusal of the vendor to consummate the sale, without the assent of the agent.

Appeal from a decree of the Circuit Court of Roanoke city. Decree for the complainant. Defendant appeals.

*Amended and Affirmed.*

This was a suit in equity, with an attachment against a foreign corporation owning effects in this State. The other facts appear in the opinion of the court.

*Hart & Hart* and *Lucian H. Cocke,* for the appellant.

*Hunt & Staples,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Roanoke city, and the facts out of which the controversy arises are practically undisputed.

The complainant in the court below was, at the time of the transaction which gave rise to the controversy, a real estate agent doing business in the city of Roanoke, under the style and firm name of T. W. Spindle & Co., and the defendant below was a corporation organized under the laws of the State of New York, with its chief office in the city of New York, and the owner of a certain dwelling house and lot in the city of Roanoke.

The defendant company entered into an agreement with the complainant, authorizing the latter to make sale of the said house and lot, and pursuant to that agreement the complainant sold the property to one, Thomas Lee Moore, and the terms and conditions of the sale were embraced in a contract dated and duly executed by the defendant company, the vendor, and Moore, the vendee, on the 29th day of July, 1902; the price being fixed at $6,100, which was to be paid as follows: On the execution of the contract, as earnest money, $100; on delivery of the deed of conveyance to Moore, $400; and 56 notes, payable monthly, with interest, each for $100, were to be executed by Moore for the remaining purchase money. The complainant, Spindle, was to receive for his services $305, which was to be paid out of the last three of the notes to be given by Moore.

Moore paid the earnest money, $100, in cash when the contract between him and the defendant company was executed, but upon having the title to the property examined by an attorney, the attorney reported certain defects therein, and, acting upon the advice of his attorney, Moore refused to accept a deed to the property until these defects were cured; and as

the defendant company insisted that the title was good and that there was no flaw in the same, it refused to have removed the alleged defects, although Moore, the vendee of the property, was anxious to obtain a good and valid conveyance therefor.

Moore was financially responsible, and the defendant company admits his good faith and fully recognizes that the contract of sale to him put the company in a position to compel compliance therewith on his part. Still, the defendant company, in the light of Moore's responsibility, and admitting the validity and binding effect of the contract on Moore, allowed him to rescind the contract and returned to him the $100 which was paid as earnest money, without the consent of the complainant. Thereupon this suit was instituted by the complainant to recover of the defendant company the sum of $305, stipulated for in the contract between the parties.

Upon the record, showing the above-mentioned undisputed facts, the circuit court decreed in favor of the complainant for the amount claimed, with interest thereon from the 1st day of September, 1902, together with the costs of the suit.

It is not denied that the complainant performed fully and completely his contract with the defendant company when he brought the company, the vendor of the property, and Moore, the vendee, together, and the contract between them of the 29th of July, 1902, was made and entered into. True, the complainant was to be paid for his services out of the proceeds of the last three notes to be given by the purchaser; but when the vendor (the defendant company) refused on its part to carry out the sale, which admittedly it could have enforced, and voluntarily released the vendee without the assent of the complainant, returning to Moore the cash that he had paid, the defendant company could not in equity and good conscience be heard to deny the right of the complainant to his compensation for making the sale.

The case here is wholly different from the cases of *Crockett* v. *Grayson*, 98 Va. 354, 36 S. E. 477, and *Murray and wife* v. *Rickard*, 103 Va. 132, 48 S. E. 871.

In the first of these cases, Crockett made a contract with Grayson, whereby authority was given Crockett to sell a farm, with the provision that Crockett was to have all the purchase money over and above $11,000. Acting under this authority, Crockett negotiated a sale with Spiller for $14,000, $10,000 of which was to be paid by the conveyance of other property, and the remaining $4,000 by the assumption on the part of Spiller of certain debts then existing as liens on the property, which Grayson represented as being the entire amount of liens thereon, and with the additional understanding and agreement that if the amount of the liens against the property should exceed $4,000, Spiller was at liberty to declare his agreement to purchase the property void. It turned out that the liens against the property were much more than $4,000, and thereupon Spiller declined to consummate the purchase, as he clearly had a right to do under the contract pursuant to which the sale of the property was made to him. Crockett thereupon brought suit against Grayson for $3,000, his commissions, alleging that he had complied with the terms of his agreement; that it was no fault of his that the sale to Spiller was not consummated; but that the failure to consummate the same was due to the misrepresentation of Grayson, who had represented that there was only $4,000 of liens against the property. This court, however, refused to permit him to recover, for the reason that the right to recover his commissions was conditioned upon a consummation of the sale of the property, and the contract of sale reserved the right to Spiller, under certain conditions, to refuse to take the property, and his exercise of this right made it impossible to consummate the sale. The language of the opinion by Keith, P., in part, is as follows: "A real estate broker, to be entitled to compensation, must complete the sale. He must find a purchaser in a situation ready and willing to complete the purchase upon the terms agreed upon before he is entitled to his commissions. When he has found such a purchaser, who has entered into a valid contract, his right to compensation cannot be defeated by the fault of the seller, by his

misrepresentation, or by his whimsical or unreasonable refusal to comply with his contract." But, as stated, Crockett's right to a commission in that case was denied, for the reason that the sale of the property to Spiller was not defeated by the fault of the seller, Grayson, by his misrepresentation, etc., but because Spiller, pursuant to the conditions of the contract of sale to him, had the right, under certain conditions, to refuse to take the property.

That is not the case here. The defendant company was not, so far as this record discloses, hampered by any condition beyond its control which prevented it from complying with its contract to sell and convey a good title for the property to Moore; nor did the contract reserve to Moore the privilege of rescinding it. It was completed, so far as the agent to make the sale was concerned, and the defendant company admits that by the contract it was in a position to compel Moore to comply, but it saw fit, in utter disregard of Spindle's rights, to fail to do so.

In *Murray* v. *Rickard, supra,* the vendors acted in compliance with the terms of the contract of sale, which were that the agent was to receive his commission out of the payments as they were made from time to time, and upon the failure of the vendee to make the payments as provided all previous payments made by him were to be forfeited and the land was to be returned to the vendors, without liability either to the vendors or the vendee. The agent was to be paid a proportionate part of his commissions out of the payments as received, and he well understood and agreed that if the vendee defaulted and refused to make further payments and forfeited the payments he had already made, the agent would not be entitled to commissions on the unpaid deferred payments. The vendee did make default, the land was returned to the vendors; and this court held that the agent was not entitled to commissions on the unpaid deferred payments of purchase money for the land agreed to be purchased by the vendee, according to the very terms of the agent's contract.

Unquestionably a broker or real estate agent may contract to have his commissions paid ratably out of the installments of purchase money, or out of any or either of them, and by his contract alone he can claim his commissions on the sale; but when a vendor has it in his power to consummate the sale and voluntarily and without the assent of the agent refuses to consummate it, it would be unjust, unfair and inequitable to deny the agent a recovery of his commissions thereon. In the present case, the contract of sale could have been enforced by the vendor. The agent had found a purchaser ready and willing to comply with the terms agreed upon; a valid contract had been entered into; the sale was completed, so far as the agent was concerned, and according to the contention of the defendant company the title to the property was good, or at the most there were only clouds upon it which the defendant believed were remediable only and could be removed; but, as stated, it declined to go further towards a consummation of the sale to Moore, and voluntarily released him from his contract.

We are of opinion that the claim asserted by the complainant, for his services in making the sale agreed to be made by the defendant company to Moore, comes clearly within the control of the rule stated in the opinion in *Crockett* v. *Grayson, supra;* but we are also of opinion that the circuit court erred in decreeing that the complainant was entitled to interest on the amount due him from September 1, 1902. The contract between Moore and the defendant company provided that Moore was to execute as of September 1, 1902, 56 notes for $100 each, with interest from their date, the aggregate of the principal sum of these notes being the amount of Moore's purchase money not paid before or at the time Moore was to receive his deed of conveyance; and complainant, by his contract with the defendant company, was, as stated, to receive $305 out of the proceeds of the last three of said notes, *i. e.*, one-third of $305 out of the notes that were to mature, respectively, on the first days of July, August and September, 1907, and is entitled to interest on the several instalments of the amount due him from the date on

which the same would have become payable. Therefore, the decree of the circuit court should have allowed a recovery in favor of the complainant of the $305, with interest as just stated, or (which would have given practically the same result) the $305, with interest thereon from August 1, 1907; and the decree will be amended so as to entitle complainant to a recovery of the defendant company of the principal sum of $305, with interest thereon from August 1, 1907, till paid; and as so amended the decree will be affirmed, with costs to the complainant, appellee here.

*Amended and Affirmed.*